Thouron v. Pearson.

## NICHOLAS THOURON

v.

ALEXANDER W. PEARSON and others.

1. A son remaining in possession of lands after conveying them to his father, the latter being very old and living with the son, is no proof of fraud.

2. Withholding a deed from the records for several years may, as an element in the proof of fraud, be explained so as to rebut any presumption of fraud arising from it.

Creditors' bill. On final hearing on pleadings and proofs.

*Mr. W. E. Potter*, for complainant.

*Mr. J. H. Nixon*, for defendants.

THE CHANCELLOR.

The complainant recovered judgment, in an action of assumpsit, against the defendant Alexander W. Pearson, in the Cumberland circuit court, on the 5th of October, 1875, for $2,174.19. He subsequently, on the 19th of November following, issued a writ of *fieri facias de bonis et terris* upon it, under which the sheriff of that county, finding no personal property of the defendant whereon to levy, levied upon a tract of about nineteen acres of land in Landis township, as the property of the latter. On the 4th of October, 1875, the day before the judgment was entered, the judgment debtor in whom the title to that property then was, conveyed it to Albert G. Pearson, his father, by deed of that date, for the consideration, according to the deed, of $7,861. The judgment debtor had previously, and in the year 1873, given a mortgage for $5,000 upon the property to his mother, but it was not recorded until the 12th of February, 1875. He had also given a mortgage to his

father upon the property, in April, 1875, for $2,500. This mortgage was recorded four days after its date. The complainant insists that those mortgages and the deed were all without consideration, and intended only to hinder and defeat him in the collection of the claim, on which he recovered his judgment. He files his bill to set them aside accordingly.

The grounds of fraud alleged in the bill are, that the mother had no separate estate when the mortgage to her was given; that, though that mortgage is dated March 10th, 1873, it was not recorded until after the summons in the complainant's suit against the mortgagor had been served; that the mortgage to the father was made a few days after the plea in that suit was filed, and that the deed was executed and recorded the day before the judgment was entered (the judgment was entered upon a *relicta*), and was acknowledged before the attorney of the defendant in that suit.

The answer, which is by all of the defendants, denies all fraud, and sets forth a state of facts which is substantiated by the testimony, and which negatives the allegations of fraud. It appears that the complainant's debt was contracted prior to the 24th of December, 1870. It was a balance due to him from the judgment debtor for his losses incurred in speculation in gold and stocks. The property in question was purchased in January, 1872, by the judgment debtor's father, from George J. Bender, for the price of $5,000, all of which was paid by the former. A deed for the property was executed by Bender to the father, but it was afterwards destroyed, and, at the request of the latter, a deed was executed by Bender to the son. The reason appears to have been the ill health of the father, who was an old man, and therefore preferred that his son, who, in case of his death, would have the property, should take the title and give to him a mortgage for the purchase-money. A mortgage was drawn in his favor under the arrangement, but it was not executed, for the reason that he, after it was

drawn, directed that the mortgage be given to his wife instead of to himself, which was done accordingly. The father swears that he directed that the mortgage should be made to his wife; that he paid all the purchase-money of the property, and took the mortgage in favor of his wife to secure him therefor. He further testifies that, subsequently, his son gave him the mortgage for $2,500, to secure him for other moneys which he had advanced to the latter, but that he preferred a deed, and, he adds, that the consideration of the mortgage and deed to him was money advanced to his son over and above the purchase-money of the property. The son specifies the moneys received by him from his father, giving the date when each sum was received. He appears by that account to have received, between the 1st of January, 1872, and the 22d of November, 1875, $9,638.97, of which he received $1,510 on the 5th of April, 1875, which was two months after the complainant's suit at law was begun. According to the testimony, the property is not worth more than $5,000 or $6,000. The evidence shows that the father was the owner of the farming utensils; that the business was conducted there in his name, and on his account, and that he furnished the means of carrying it on. And it appears to have been unsuccessful.

The complainant's counsel urges, as evidence of fraud, that the son remained in possession of the property after the deed to his father was executed; but it appears that the father and mother were very old, and that the son, who was unmarried, lived with them there. The father was in possession. The withholding the mortgage to the mother from record is explained by the testimony of both the mother and son. The latter requested that it might be done in order that he might thus be enabled to raise some small sums on first mortgage of the property, which he in fact did, and it appears that it was put on record at her request. There is no evidence of fraud.

The bill must be dismissed, with costs.